IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

**SCOTT C. SMITH**                                                                           **PLAINTIFF**
426 2nd Ave E
Kalispell, Montana 59901


vs.                                          1:23-cv-2002-TNM


**GEORGE ANTHONY DEVOLDER-SANTOS,**                           **DEFENDANT**
**in his official capacity as U.S. Representative**
**1117 Longworth House Office Building**
**Washington, D.C. 20515**


## FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## I.  INTRODUCTION

1.      Plaintiff Scott C. Smith ("Plaintiff"), by and through his attorney Devin Stone of

Eagle Team, LLP, brings this action to vindicate his free speech rights and to prevent Defendant,

United States Representative George Anthony Devolder-Santos ("Defendant"), from limiting

access to his Twitter account (@santos4congress)[1] based on the viewpoint of his constituents.

2.      This lawsuit has not yet been served, no answer has been filed, and this amended

complaint is filed by right pursuant to Rule 15.[2]

---

[1]      Defendant has two Twitter accounts, his House of Representatives account: @repsantosny03 and a second account, @santos4congress, which was Defendant's official campaign account. Recently, Defendant changed his Twitter handle to @MrSantosNY. However, when public searches his old handle, @santos4congress, it automatically connects them to his new handle, @MrSantosNY. As such, in this First Amended Complaint, Plaintiff will refer to Defendant's Twitter account as @santos4congress. Defendant uses the @santos4congress account frequently to disseminate official congressional information to his constituents. One of the reasons Plaintiff followed this account over the other was the fact that Defendant was primarily using it to tweet out information about his work in Congress and using it as his "official" government account.

[2]      A Redline version hereof is attached as Exhibit A.

3. Plaintiff is a Navy veteran and a resident of Montana.

4. In or around May of 2023, along with other prior instances, Plaintiff exercised his constitutional rights to speak freely and to petition his government for redress of grievances by publishing statements critical of Defendant in the comments section of the Twitter account he uses to address and interact with the public, which includes citizens of the United States.

5. Defendant retaliated against Plaintiff for engaging in fully protected political speech by permanently blocking him from accessing or commenting on his Twitter account.

6. Defendant's actions violated the First and Fourteenth Amendments to the Constitution of the United States because the comment section of his Twitter account is a designated public forum within which Defendant may not discriminate against speakers based on their viewpoint.

7. Defendant obviously perturbed by Plaintiff's criticism of his political views, has retaliated and suppressed dissent by excluding -- or blocking – Plaintiff from access to Defendant's Twitter account he primarily uses to post his views since being elected to Congress, his de facto "official" Twitter account.

8. The manner in which Defendant uses the @santos4congress Twitter account, renders it a public forum for speech and part of the "public square" for the exchange of ideas that Plaintiff is entitled to participate in.

9. Defendant's tweets on @santos4congress generate thousands of comments from other citizens, and regularly makes news, demonstrating the existence of a dynamic public forum that he has excluded Plaintiff from because of his views.

10.     Plaintiff has a constitutional right to access Defendant's @santos4congress Twitter account. Defendant's practice of blocking Twitter users he disagrees with is unconstitutional and this suit seeks to redress that wrong.

11.     As the Supreme Court observed just a few years ago, social media platforms such as Twitter and Facebook provide "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard" and is in effect, a "vast democratic forum." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017).

12.     Social media platforms such as Twitter have revolutionized civic engagement in our participatory democracy. Not be outdone, "[g]overnors in all 50 States and almost every Member of Congress have set up [Twitter] accounts" for civic engagement and political discourse, allowing citizens to "petition their elected representatives and otherwise engage with them in a direct manner," *Packingham*, 137 S. Ct. at 1735.

13.     Defendant established the @santos4congress Twitter account to share his political views, and then used it to further and support his campaign to be the United States Representative for New York's 3rd congressional district. Defendant uses the account as an instrument of his office and blocks others, such as Plaintiff, when they have the temerity to criticize him.

14.     The Second Circuit Court of Appeals recently recognized, when faced with a similar "blocking" case, it is unconstitutional for a political figure to engage in viewpoint discrimination by utilizing Twitter's 'blocking' function to limit certain users access to his or her social media account, which is otherwise open to the public at large, because he or she disagrees with their speech. *Knight First Amendment Inst. at Columbia Univ. v. Trump (Knight Institute I)*, 302 F. Supp. 3d 541, 580 (S.D.N.Y. 2018), *aff'd*, 928 F.3d 226, 230 (2d Cir. 2019), *reh'g en banc*

*denied*, 953 F.3d 216 (2d Cir. 2020). Likewise here, Plaintiff's First Amendment rights have been violated by Defendant.

15.     As part of the exercise of its First Amendment rights, Plaintiff has regularly tweeted criticism of Defendant. Defendant's retaliatory response to Plaintiff's valid viewpoint- based criticism was to block Plaintiff from: (a) viewing his @santos4congress Twitter account, (b) replying to or "sharing" his Tweets, or (c) otherwise engaging with those members of the public who interact within the replies to his tweets.

16.     Defendant's blocking of Plaintiff violates the First Amendment. Defendant's Twitter account is a public forum. Plaintiff was blocked from this forum because of opinions he expressed in replying to Defendant's tweets, or in tweets that "mentioned," or tagged, Defendant's Twitter account. Because of his criticism of Defendant, Plaintiff has been prevented or impeded from viewing Defendant's tweets, from replying to those tweets, from viewing the discussions associated with the tweets, and from participating in those discussions. Defendant's continued blocking of Plaintiff unconstitutionally impairs his right to participate in a public forum. Defendant's actions also unconstitutionally restrict Plaintiff's rights to access important government information and to petition the government for redress of grievances.

17.     Plaintiff respectfully requests that the Court declare that the viewpoint-based blocking of Plaintiff violates the First Amendment, and order Defendant to unblock Plaintiff's accounts from the @santos4congress account.

## II.     JURISDICTION AND VENUE

18.     This action arises under the Constitution and laws of the United States of America. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 2201-2202.

Jurisdiction supporting Plaintiff's claim for attorney's fees and costs is conferred by the Equal Access to Justice Act, 28 U.S.C. § 2412 and 42 U.S.C. § 1988.

19.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and (e)(1). A substantial part of the events giving rise to this claim occurred in this District, and Defendant is an officer of the United States sued in his official capacity.

## III.  PARTIES

20.     Plaintiff is an individual and resident of Montana.

21.     Defendant is an American politician who is the U.S. Representative for New York's 3rd congressional district, serving since 2023 and is sued in his official capacity only.

22.     Defendant and his staff oversee and operate his Twitter account using the handle @santos4congress.

## IV.  FACTUAL ALLEGATIONS

23.     Twitter is a social media platform that currently has more than 340 million active users worldwide, including some 70 million in the United States.

24.     The platform allows users to publish short messages to the general public called "tweets," to republish or respond to others' tweets, and to interact with other Twitter users.

25.     A Twitter "user" is an individual who has created an account on the platform. A user can post "tweets" to a web page on Twitter that is attached to the user's account. Tweets can include photographs, videos, and links. Some Twitter users do not tweet (publish messages) at all. Others publish hundreds of messages a day. Collectively, Twitter users "tweet" more than 500 million tweets per day.

26.     A Twitter user adopts an account name, which is an @ symbol followed by a unique identifier (e.g. @santos4congress), and a descriptive name (e.g. George Santos). The account name is called the user's "handle."

27.     Elected officials (including Defendant) regularly use Twitter to communicate with their constituents, who themselves use Twitter to connect directly and immediately with elected officials about the issues they are most passionate about.

28.     Speech posted on Twitter ranges from personal insult to poetry, but particularly relevant here is that a significant amount of speech posted on the platform is political speech by, to, or about the United States Government and its elected officials.

29.     A Twitter user's web page displays all tweets generated by the user, with the most recent tweets appearing at the top of the page. This display is known as a user's "timeline." When a user generates a tweet, the timeline updates immediately to include that tweet. Anyone who can view a user's public Twitter web page can see the user's timeline.

30.     Alongside the handle, a user's webpage will display the date the user joined Twitter and a button that invites others to "Tweet to" the user. This button is visible only to other Twitter users. A user's Twitter webpage may also include the following:

   a. a short biographical description;
   b. a profile picture, such as a headshot;
   c. a "header" image, which appears as a banner at the top of the webpage;
   d. the user's location;
   e. a button labeled with an envelope symbol, which allows two users to correspond privately; and
   f. a small sample of photographs and videos posted to the user's timeline, which link to a full gallery.

31.     An individual "tweet" comprises the tweeted content (this includes a message, including any embedded photograph, video, or link), the user's account name (with a link to the

user's Twitter webpage), the user's profile picture, the date and time the tweet was generated, and the number of times the tweet has been replied to, retweeted by, or liked by other users.

32.     By default, Twitter webpages and their associated timelines are visible to everyone with internet access, who are not blocked including those who are not Twitter users. However, although non-users can view users' Twitter webpages, they cannot interact with users on the Twitter platform.

33.     Because all Twitter webpages are by default visible to all Twitter users and to anyone with access to the internet, users who wish to limit who can see and interact with their tweets must affirmatively "protect" their tweets. Other users who wish to view "protected" tweets must request access from the user who has protected her tweets. "Protected" tweets do not appear in third-party search engines, and they are searchable only on Twitter, and only by the user and her approved followers.

34.     A user whose account is public (i.e. not protected) but who wants to make his or her tweets invisible to another user can do so by "blocking" that user. (Twitter provides users with the capability to block other users, but, importantly, it is the users themselves who decide whether to make use of this capability.) A user who blocks another user prevents the blocked user from interacting with the first user's account on the Twitter platform.

35.     A blocked user cannot see or reply to the blocking user's tweets, view the blocking user's list of followers or followed accounts, or use the Twitter platform to search for the blocking user's tweets. The blocking user will not be notified if the blocked user mentions her; nor will the blocking user see any tweets posted by the blocked user.

36.     If the blocked user attempts to follow the blocking user, or to access the Twitter webpage from which the user is blocked, the user will see a message indicating that the other user

has blocked him or her from following the account and viewing the tweets associated with the account. This is an example of a notification from Twitter that a user has been blocked by @santos4congress:



37.    Plaintiff received this type of "blocking" message from Defendant's Twitter account. But, @santos4congress is a designated public forum, operated by Defendant, in which political speech is engaged in, disseminated, and debated, and his blocking of Plaintiff is unconstitutional as a result.

38.    Twitter users can subscribe to other users' messages by "following" those users' accounts, unless blocked. Users see all tweets posted or retweeted by accounts they have followed. This display is labeled "Home" on Twitter's site, but it is often referred to as a user's "feed."

39.    Twitter permits users to establish accounts under their real names or pseudonyms. Users who want to establish that they are who they claim to be can ask Twitter to "verify" their accounts. When an account is verified, a blue badge with a checkmark appears next to the user's name on his or her Twitter page and on each tweet the user posts.

40.     Beyond publishing tweets to their followers, Twitter users can engage with one another in a variety of ways. For example, they can "retweet" (republish) the tweets of other users, either by publishing them directly to their own followers or by "quoting" them in their own tweets. When a user retweets a tweet, it appears on the user's timeline in the same form as it did on the original user's timeline, but with a notation indicating that the post was retweeted.

41.     A Twitter user who is not blocked can also reply to other users' tweets. Like any other tweet, a reply can include photographs, videos, and links. When a user replies to a tweet, the reply appears on the user's timeline under a tab labeled "Tweets & replies." The reply will also appear on the original user's feed in a "comment thread" under the tweet that prompted the reply. Other users' replies to the same tweet will appear in the same comment thread.

42.     Reply tweets by verified users, reply tweets by users with a large number of followers, and tweets that are "favorited" and retweeted by large numbers of users generally appear higher in the comment threads.

43.     A Twitter user who is not blocked can also reply to other replies. A user whose tweet generates replies will see the replies below his or her original tweet, with any replies-to-replies nested below the replies to which they respond. The collection of replies and replies-to-replies is sometimes referred to as a "comment thread." Twitter is called a "social" media platform in large part because of comment threads, which reflect multiple overlapping conversations among and across groups of users.

44.     A Twitter user who is not blocked can also "favorite" or "like" another user's tweet by clicking on the heart icon that appears under the tweet. By "liking" a tweet, a user may mean to convey approval or to acknowledge of having seen the tweet.

45.     A Twitter user who is not blocked can also "mention" another user by including the other user's Twitter handle in a tweet. A Twitter user mentioned by another user will receive a "notification" that he or she has been mentioned in another user's tweet.

46.     Tweets, retweets, replies, likes, and mentions are controlled by the user who generates them. No other Twitter user can alter the content of any retweet or reply, either before or after it is posted. Twitter users cannot prescreen tweets, replies, likes, or mentions that reference their tweets or accounts.

47.     Plaintiff operates the Twitter account @thescottcsmith, which has approximately 1,572 followers.

48.     Defendant uses the Twitter handle @santos4congress.

49.     Defendant established the @santos4congress Twitter account to share his political views, and then used it to further and support his campaign to be the United States Representative for New York's 3rd congressional district. He then began using the account as an instrument of his office and his primary account.

50.     Today, Defendant use it almost exclusively as a channel for communicating with the public about his office's policies, actions, and opinions. Because of the way he uses the account, Defendant's tweets from the handle @santos4congress have become an important source of news and information about his office (and the Government), and comment threads associated with the tweets have become important forums for speech by, to, and from Defendant.

51.     Defendant presents the account to the public as one that he operates in his official capacity rather than his personal one. @santos4congress is controlled completely by him in his official capacity as a United States Representative. Defendant controls who may view his tweets, reply to his tweets, and view the replies to his tweets.

52.     Defendant's account is generally accessible to the public at large without regard to political affiliation or any other limiting criteria, unless Defendant or his staff blocks access. Any member of the public can view his posts. Defendant has not "protected" his tweets, and anyone who wants to follow the account can do so. He has not issued any rule or statement purporting to limit (by form or subject matter) the speech of those who reply to his tweets.

53.     Defendant also uses @santos4congress to release public statements and official policy positions.

54.     Many of Defendant's tweets have sparked social unrest and many concerned citizens, including Plaintiff, have tweeted their criticism against Defendant and his views.

55.     Defendant's the @santos4congress account reflects state action, that the interactive space associated with Defendant's tweets constitutes a designated public forum, and that Defendant violated the First Amendment by blocking the individual plaintiffs in that case from this forum because of viewpoints they expressed in replies to Defendant's tweets.

56.     The comment threads associated with tweets from @santos4congress are important public forums for discussion and debate about Defendant, his decisions, and his official government policy.

57.     Typically, tweets from @santos4congress generate thousands of replies, retweets, and quote tweets. The @santos4congress account is a kind of virtual town hall in which Defendant and his aides use the tweet function to communicate news and information to the public, and members of the public use the reply function to respond to Defendant and his aides so as to exchange views with one another.

58.     Plaintiff often responded to tweets from @santos4congress, and he would occasionally respond to tweets from and mention the @santos4congress account. His tweets directed toward @santos4congress were generally critical of Defendant.

59.     For instance on May 19, 2023, Plaintiff tweeted the following:

60.     Defendant blocked Plaintiff on or before June 6, 2023.

61.     Plaintiff does not know on exactly what date Defendant blocked him from the @santos4congress account. Plaintiff is also not certain which of his tweets prompted the blocking.

62.     Defendant's blocking of Plaintiff from the @santos4congress account prevents or impedes him from viewing the Defendant's tweets; from replying to these tweets; from viewing the comment threads associated with these tweets; and from participating in the comment threads; and has thus expelled Plaintiff from participating in the public square.

63.     Defendant blocked Plaintiff in retaliation.

64.     Defendant's blocking of Plaintiff was viewpoint-based and imposes an unconstitutional restriction on Plaintiff's speech in a designated public forum and his right to petition the government for redress of grievances.

65.     Plaintiff can no longer view Defendant's Twitter feed. Plaintiff can no longer reply to Defendant's tweets. And it can no longer participate in the discussions in the replies to Defendant's tweets. Each new tweet by Defendant is a piece of information that Plaintiff is foreclosed from receiving and a potential discussion (in the replies to that tweet) in which Plaintiff cannot participate.

66.     Defendant's blocking of Plaintiff violates his First Amendment rights. It unconstitutionally restricts his rights to read or participate in the discussion occurring in the public forum of the @santos4congress account. It also unconstitutionally restricts his right to access statements that Defendant is otherwise making available to the public at large, and his right to petition the government for redress of grievances.

## V.     CAUSE OF ACTION
### Violation of the First Amendment of the U.S. Constitution
### (Declaratory and Injunctive Relief)

67.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

68.     By using his Twitter account to engage in political discourse related to his official duties as a United States Representative and opening his account to comment by the general public, Defendant has created a designated public forum.

69.     Regulation of speech in a designated public forum based on the viewpoint of the speaker is presumptively unconstitutional.

70.     Defendant blocked Plaintiff from his Twitter account because of a comment critical of his political position.

71.     At all times relevant to this Complaint, Defendant was acting under the color of law as United States Representative.

72.     Plaintiff was engaged in First Amendment-protected speech in his posting Tweets online about Defendant and viewing Defendant's tweets.

73.     Plaintiff's speech was on a matter of public concern and did not violate any law.

74.     Defendant's blocking of Plaintiff from the @santos4congress account violates the First Amendment because it imposes a viewpoint-based restriction on the Plaintiff's rights to read or participate in a public forum.

75.     Defendant's blocking of Plaintiff from the @santos4congress account violates the First Amendment because it imposes a viewpoint-based restriction on the Plaintiff's right to access to official statements Defendant otherwise makes available to the general public.

76.     Defendant's blocking of Plaintiff from the @santos4congress account violates the First Amendment because it imposes a viewpoint-based restriction on the Plaintiff's right to petition the government for redress of grievances.

77.     Defendant's blocking of Plaintiff and other accounts from the @santos4congress account based on their viewpoints violates the First Amendment because it imposes a viewpoint-based restriction on the Plaintiff's right to hear.

78.     By blocking Plaintiff from his official Twitter account, Defendant prevented Plaintiff from exercising his First Amendment rights, including his right to speak freely and right to receive information.

79.     Defendant's blocking of Plaintiff was an improper viewpoint-based restriction on speech.

80.     Defendant's official Twitter page, @santos4congress, is a designated public forum.

81.     Defendant engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

82.     Defendant's actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages. The acts and inactions of Defendant caused Plaintiff damages in that he was prevented from speaking freely on a matter of public concerns, among other injuries, damages, and losses.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant George Anthony Devolder-Santos, and award him all relief as allowed by law and equity, including, but not limited to the following:

1.     A declaration that Defendant's viewpoint-based blocking of Plaintiff from the @santos4congress Twitter account violates his constitutional rights;

2.     An injunction requiring Defendant to unblock Plaintiff from the @santos4congress Twitter account, and prohibiting Defendant from blocking Plaintiff from the account in the future;

3.     Compensatory damages as allowed by law;

4.     Punitive damages as allowed by law in an amount to be determined at trial;

5.     Pre-judgment and post-judgment interest at the highest lawful rate;

6.     Reasonable Attorney's fees and costs, pursuant to 28 U.S.C. § 2412; and

7.     Any additional relief as may be just and proper.

Respectfully submitted,

**PLAINTIFF SCOTT C. SMITH**

EAGLE TEAM, LLP
1050 Connecticut Ave NW, Suite 5038
Washington, DC 20036
Telephone: (833) 507-8326

*/s/ Devin Stone*
Devin Stone
DC Bar No. 1022055
devin@eagleteam.law